Filed 12/12/22  In re L.T. CA4/1

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| In re L.T., a Person Coming Under the Juvenile Court Law. | |
| SAN DIEGO COUNTY HEALTH AND HUMAN SERVICES AGENCY, | D080778 |
| Plaintiff and Respondent, | |
| v. | (Super. Ct. No. EJ4686C) |
| J.H., | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of San Diego County, Gary M. Bubis, Judge.  Affirmed.

Emily Uhre, under appointment by the Court of Appeal, for Defendant and Appellant.

Claudia G. Silva, County Counsel, Caitlin E. Rae, Chief Deputy County Counsel, and Lisa M. Maldonado, Deputy County Counsel, for Plaintiff and Respondent.

J.H. (Mother) appeals from the juvenile court's order terminating her parental rights over L.T. The sole issue in this case is whether reversal of the order is warranted because the San Diego County Health and Human Services Agency (Agency) failed to comply with state law interpreting the Indian Child Welfare Act of 1978 (25 U.S.C. § 1901 et seq. (ICWA)). Specifically, Mother argues the Agency failed to comply with its initial inquiry duties under Welfare and Institutions Code section 224.2, subdivision (b)[1] because it neglected to interview extended family members about L.T.'s possible Indian ancestry. Mother also contends the Agency failed to satisfy its further inquiry obligations under section 224.2, subdivision (e), after receiving information giving rise to a reason to believe L.T. may have Navajo heritage from the maternal side of the family.

The Agency concedes its initial inquiry was deficient but contends the error was harmless. The Agency also concedes that further inquiry was required, but contends its further inquiry was sufficient, and argues any error was nonetheless harmless.

We grant the Agency's motion to augment the record to include an addendum report filed in L.T.'s siblings' dependency case on September 7, 2022, showing Navajo Nation denied that the family is enrolled or is eligible for enrollment with Navajo Nation. Based thereon, we conclude any further inquiry deficiency was harmless error. We also conclude the Agency's initial inquiry was deficient but that the errors were harmless under *In re Benjamin M.* (2021) 70 Cal.App.5th 735 (*Benjamin M.*). The order is therefore affirmed for lack of prejudicial error.

---

[1] All further section references are to the Welfare and Institutions Code, unless otherwise indicated.

## FACTUAL AND PROCEDURAL BACKGROUND

The Agency initiated this dependency proceeding under section 300, subdivision (b) on behalf of L.T. in June 2021, alleging L.T. had suffered or was at substantial risk of suffering serious physical harm or illness due to Mother's ongoing substance abuse. L.T. was placed with paternal grandparents, who were found to be the prospective adoptive parents.

### A. *ICWA Inquiries Regarding Paternal Family*

In its petition, the Agency indicated that it asked L.T.'s father, L.T.S. (Father)[2] about L.T.'s Indian status and that the inquiry gave no reason to believe L.T. is an Indian child.

In its detention report, the Agency reported that Father denied having any Indian heritage on June 2, 2021. Father stated he would like paternal grandfather and paternal grandmother to be considered for placement. The Agency reported speaking with paternal grandfather, who denied that anyone in his family has Indian heritage. The Agency also reported speaking with paternal grandmother, but did not report asking her about L.T.'s possible Indian heritage.

In its jurisdiction and disposition report, the Agency reported that Father again denied Indian heritage on June 16, 2021. The Agency reported that a paternal great-aunt was present when the Agency went to paternal grandparents' home on one occasion, but did not indicate speaking with her or asking her about L.T.'s possible Indian heritage. The Agency also reported sending relative notification letters to ten individuals with the same last name as Father, whose relationship to L.T. was listed as "Relative." The

---

[2] Father is not a party to this appeal.

Agency had not received a response from any of the ten individuals. The Agency reported calling two of the ten individuals, who the Agency later identified as paternal uncle and paternal aunt, and leaving each a voicemail requesting a return call.

B.    *ICWA Inquiries Regarding Maternal Family and ICWA Finding*

In its detention report, the Agency stated that it attempted to interview Mother regarding L.T.'s possible Indian heritage, however, Mother was not able to complete the interview because she was incapacitated and arrested for being under the influence of substances. The Agency reported interviewing maternal grandmother, who stated that her family may have Indian heritage through a Navajo tribe in Idaho. She did not have any additional information.

The Agency also reported speaking with two maternal aunts, but did not indicate asking them about potential Indian heritage. Additionally, the Agency reported attempting to speak with maternal great-grandmother by telephone, but could not leave a voicemail because the phone was disconnected. The Agency also reported calling and leaving a voicemail for maternal uncle B.P.

In its jurisdiction and disposition report, the Agency indicated that Mother mentioned having another brother, maternal uncle D.P. The Agency reported that Mother claimed maternal great-great-grandmother was "part of" the Navajo tribe, but did not know her membership status. Mother denied that she herself or maternal grandmother were members or ever lived on a reservation. Mother stated maternal grandmother would have more information. Maternal grandmother subsequently denied that she was a member of a tribe, but reported that her mother, maternal great-

4

grandmother claimed Navajo heritage. Maternal grandmother stated she would try to obtain more information.

The Agency reported that it sent certified inquiry letters and follow-up e-mails to Navajo Nation, the Ramah Navajo Chapter of the Navajo Nation (Ramah Navajo Chapter), and the United States Department of the Interior Bureau of Indian Affairs Navajo Regional Office (BIA Navajo Regional Office).

At the initial jurisdiction and disposition hearing, the court deferred on making a finding regarding ICWA, acknowledging that the Agency was waiting to hear a response from the Navajo tribe.

In its July 20, 2021 addendum report for the contested jurisdiction and disposition hearing, the Agency reported that it e-mailed follow-up inquiry letters and attempted phone calls to Navajo Nation, the Ramah Navajo Chapter, and the BIA Navajo Regional Office. The Agency reported a representative from the Ramah Navajo Chapter indicated Navajo Nation oversees all ICWA inquires for all of Navajo. Subsequently, the Agency received a letter from the Ramah Navajo Chapter stating the Ramah Navajo Chapter could not confirm or deny that L.T., Mother, or Father were members or eligible for membership, and that the inquiry information would be forwarded to the Navajo Nation ICWA Office to be processed. The Agency received a letter from Navajo Nation dated June 28, 2021, stating the tribe was still verifying enrollment or eligibility for enrollment. The Agency also received a letter from the BIA Navajo Regional Office acknowledging receipt of the inquiry.

At the July 20, 2021 contested jurisdiction and disposition hearing, the juvenile court found that reasonable inquiry was made regarding ICWA and that ICWA did not apply to the proceedings.

5

In its report for the contested section 366.26 hearing, the Agency reported receiving a letter from Navajo Nation dated July 8, 2021, indicating that they were unable to verify L.T.'s eligibility for tribal membership based on the ancestry provided, and that the intake would therefore be closed. The Agency reported that it reached out to Navajo Nation's ICWA representative to review the letter and was awaiting a response to confirm that L.T. is not eligible for membership.

At the June 23, 2022 contested section 366.26 hearing, the court referenced Navajo Nation's July 8, 2021 letter, and acknowledged that Navajo Nation indicated they could not verify L.T.'s eligibility for membership. After the Agency confirmed that was correct, the court confirmed its finding that ICWA did not apply to the proceedings.

## II.

## DISCUSSION

Mother argues the Agency failed to satisfy its initial inquiry obligations under section 224.2, subdivision (b), because it did not ask extended family members about L.T.'s potential Indian ancestry. Mother also contends the Agency failed to satisfy its further inquiry obligations under section 224.2, subdivision (e), after receiving information giving rise to a reason to believe L.T. may have Navajo heritage from the maternal side of the family.

A.    *Applicable Law*

Congress enacted ICWA to address concerns regarding the separation of Indian children from their tribes through adoption or foster care placement with non-Indian families. (*In re Isaiah W.* (2016) 1 Cal.5th 1, 7.) Under California law adopted pursuant to ICWA, the juvenile court and Agency have an "affirmative and continuing duty to inquire" whether a child "is or may be an Indian child." (§ 224.2, subd. (a); see *In re Isaiah W.*, at p. 9.) An

6

"Indian child" is defined in the same manner as under federal law, i.e., as "any unmarried person who is under age eighteen and is either (a) a member of an Indian tribe or (b) is eligible for membership in an Indian tribe and is the biological child of a member of an Indian tribe[.]" (25 U.S.C. § 1903(4); accord Welf. & Inst. Code, § 224.1, subd. (a) [adopting the federal definition].)

As outlined by this court in *In re D.S.* (2020) 46 Cal.App.5th 1041, 1052 (*D.S.*), "section 224.2 creates three distinct duties regarding ICWA in dependency proceedings. First, from the Agency's initial contact with a minor and his family, the statute imposes a duty of inquiry to ask all involved persons whether the child may be an Indian child. (§ 224.2, subds. (a), (b).) Second, if that initial inquiry creates a 'reason to *believe*' the child is an Indian child, then the Agency 'shall make *further inquiry* regarding the possible Indian status of the child, and shall make that inquiry as soon as practicable.' (*Id.*, subd. (e), italics added.) Third, if that further inquiry results in a reason to *know* the child is an Indian child, then the formal notice requirements of section 224.3 apply."

During the first stage of initial inquiry, "[s]ection 224.2, subdivision (b) specifies that once a child is placed into the temporary custody of a county welfare department, such as the Agency, the duty to inquire 'includes, but is not limited to, asking the child, parents, legal guardian, Indian custodian, extended family members, others who have an interest in the child, and the party reporting child abuse or neglect, whether the child is, or may be, an Indian child.' " (*D.S.*, *supra*, 46 Cal.App.5th at pp. 1048-1049.)

ICWA defines " 'extended family member' " by "the law or custom of the Indian child's tribe" or, absent such law or custom, as "a person who has reached the age of eighteen and who is the Indian child's grandparent, aunt or uncle, brother or sister, brother-in-law or sister-in-law, niece or nephew,

7

first or second cousin, or stepparent." (25 U.S.C. § 1903(2); § 224.1, subd. (c) [" 'extended family member' . . . defined as provided in [§] 1903" of ICWA].)

After a "reason to believe" that an Indian child is involved has been established, further inquiry regarding the possible Indian status of the child is required. (§ 224.2, subd. (e).) The duty of further inquiry includes (1) interviewing the parents and extended family members; (2) contacting the Bureau of Indian Affairs and State Department of Social Services for assistance in identifying the names and contact information of the tribes in which the child may be a member, or eligible for membership; and (3) contacting tribes and anyone else who might have information regarding the child's membership or eligibility in a tribe; contact with a tribe "shall include" information identified by the tribe as necessary for the tribe to make a membership or eligibility determination. (*Id*., subd. (e)(2)(A-C).)

"On appeal, we review the juvenile court's ICWA findings for substantial evidence." (*D.S.*, *supra*, 46 Cal.App.5th at p. 1051.) However, where the facts are undisputed, we independently determine whether ICWA's requirements have been satisfied. (*Ibid*.)

B.   *Further Inquiry*

Mother argues the duty of further inquiry was triggered based on Mother's claim that maternal great-great-grandmother was "part of" the Navajo tribe and maternal grandmother's statement indicating maternal great-grandmother claimed Navajo heritage. Mother asserts the Agency's further inquiry was inadequate in three ways. First, Mother contends the Agency failed to make the required further ICWA inquiry of the two maternal aunts with whom the Agency had contact. Second, Mother contends the Agency failed to take reasonable steps to locate and obtain information from other maternal extended family members: (1) maternal uncle D.P., who

8

Mother mentioned; and (2) maternal uncle B.P., who did not return the Agency's call. Third, Mother contends the Agency failed to make a sufficient effort to speak with maternal great-grandmother, who Mother contends was the person most likely to have relevant information. We need not resolve whether the Agency's further inquiry was adequate because we conclude any error was nonetheless harmless.

Because the claimed failures concern the Agency's state statutory duties to further inquire regarding L.T.'s possible Indian ancestry, we may not reverse unless error is prejudicial under state law. (Cal. Const., art. VI, § 13 ["No judgment shall be set aside . . . unless, after an examination of the entire cause, including the evidence, the court shall be of the opinion that the error complained of has resulted in a miscarriage of justice."]; *People v. Watson* (1956) 46 Cal.2d 818, 836 [miscarriage of justice may be found when court concludes it is reasonably probable result more favorable to appellant would have been reached in absence of error].) That is, any error " 'must be held harmless unless the appellant can show a reasonable probability that he or she would have enjoyed a more favorable result in the absence of the error.' " (*In re A.M.* (2020) 47 Cal.App.5th 303, 318.) In the ICWA context, the question of harmless error is sometimes phrased as "whether there is ' "no basis to believe" ' a different result would occur as to the child's Indian status." (*In re Z.N.* (2009) 181 Cal.App.4th 282, 300 (*In re Z.N.*).)

In answering this question, we first address the Agency's motion to augment filed on November 2, 2022. The Agency sought to augment the record on appeal with a report that the Agency filed on September 7, 2022, in the juvenile dependency matter involving L.T.'s siblings. The report indicates that on August 31, 2022, the "Navajo Office of Vital Records verified there was no record found on the family that they are enrolled or eligible for

9

membership with the Navajo Nation." Attached to the report is an e-mail from a Navajo Nation representative to the Agency stating the same.

Under Evidence Code section 452, subdivision (d) we may take judicial notice of a record of any court of this state. Code of Civil Procedure section 909 also allows appellate courts to "accept evidence in dependency cases 'to expedite just and final resolution for the benefit of the children involved.' " (*In re Carrie M.* (2001) 90 Cal.App.4th 530, 535.) That right, however, should be exercised sparingly and only under exceptional circumstances. (*In re Zeth S.* (2003) 31 Cal.4th 396, 405, 408, fn. 5 (*Zeth S.*).)

We conclude this is one of the rare cases where it is appropriate to take judicial notice of evidence outside of the appellate record. There is already an order terminating Mother's and Father's parental rights in L.T.'s case. Admission of the Agency's report filed in L.T.'s siblings' case would not merely expedite a resolution in L.T.'s case, but it would promote the finality of the order terminating parental rights and prevent further delay to L.T.'s stability.

Mother objects to our consideration of the evidence based on the following language from *Zeth S.*, *supra*, 31 Cal.4th at p. 405: "It has long been the general rule and understanding that 'an appeal reviews the correctness of a judgment as of the time of its rendition, upon a record of matters which were before the trial court for its consideration.' " Mother points out that this rule reflects the distinction between the trial court as the trier of fact and the appellate court as deciding questions of law.

We take judicial notice here, however, not to assess whether the order terminating parental rights was based on an insufficient further inquiry by the Agency, but rather to assess whether there was resulting prejudice, which is a question of law for this court to decide, not one for the trier below.

10

(*In re Z.N.*, *supra*, 181 Cal.App.4th at p. 299 [taking judicial notice of documents filed in a half siblings' cases for purpose of assessing prejudice]; see also *In re A.B.* (2008) 164 Cal.App.4th 832, 842 [taking judicial notice of a document filed in a sibling's or half sibling's case for purpose of assessing prejudice].) The Agency's report filed in L.T.'s siblings' case shows that the Navajo Nation denied that the family was enrolled or eligible for enrollment.[3] Even if the Agency conducted further inquiries of the individuals identified by Mother in this case, there is no reasonable probability that Navajo Nation would have determined that L.T. was eligible for membership when the tribe already determined that L.T.'s siblings were not eligible. Thus, any further inquiry error was harmless.[4]

C.    *Initial Inquiry*

Mother argues the Agency failed to satisfy its initial inquiry obligations as to paternal and maternal sides of the family.

---

[3]    Mother argues Navajo Nation's e-mails to the Agency are unreliable. The issue, however, is the adequacy of the Agency's further inquiry. We are granting judicial notice of the report that the Agency filed in L.T.'s siblings' case, which is a certified copy of a record filed in the juvenile court, to demonstrate what additional inquiry could be made and what response would be received. While Navajo's Nation's e-mail to the Agency is attached to the report, we are not relying on the accuracy of an unsworn or unauthenticated e-mail.

[4]    In its November 2, 2022 motion to augment, the Agency also sought to augment the record with a September 8, 2022 minute order from L.T.'s siblings' case, showing that the juvenile court in that matter confirmed its finding that ICWA did not apply to that proceeding. We decline to take judicial notice of this document because it matters not whether there was an ICWA finding in L.T.'s sibling's case, but rather whether documents from that case show lack of prejudicial error in L.T.'s case. (*In re Z.N.*, *supra*, 181 Cal.App.4th at p. 300.)

11

On the paternal side, Mother contends: (1) the Agency failed to conduct an ICWA inquiry of paternal grandmother despite her availability; (2) the Agency failed to conduct an ICWA inquiry of a great-aunt who was present when a social worker conducted a visit of paternal grandparents' home; (3) the Agency failed to make reasonable follow-up efforts to contact paternal uncle and paternal aunt after they did not return the Agency's phone call; and (4) the Agency failed to make a meaningful effort to contact eight other paternal relatives after the Agency sent relative notification letters but did not receive any response.

On the maternal side, Mother raises issue with the same individuals that Mother raised in her argument regarding further inquiry. Mother argues: (1) the Agency failed to conduct an ICWA inquiry of two maternal aunts despite having contact with these extended family members; (2) the Agency failed to take reasonable steps to locate and obtain information from maternal uncle D.P., who Mother mentioned, and the Agency failed to follow up with maternal uncle B.P., who did not return the Agency's phone call;) and (3) the Agency failed to make a sufficient effort to contact maternal great-grandmother, who Mother contends was particularly important as potentially having Navajo heritage.

We conclude the Agency's failure to conduct an ICWA inquiry of paternal great-aunt was not error because the applicable definition of " 'extended family member' " does not include a great-aunt. (See 25 U.S.C. § 1903(2); § 224.1, subd. (c) [" 'extended family member' . . . defined as provided in [§] 1903" of ICWA].) Likewise, while maternal great-grandmother may have been subject to the Agency's further inquiry obligations, a great-grandmother is not included in the definition of " 'extended family member' " subject to the Agency's initial inquiry obligation.

12

(*Ibid.*; compare with § 224.2, subd. (e)(2)(C) [further inquiry includes contacting "any other person that may reasonably be expected to have information regarding the child's membership, citizen status, or eligibility"].) The Agency's failure to follow up on its efforts to contact paternal uncle, paternal aunt, the eight other paternal relatives who did not respond to the Agency's relative notification letters, or maternal uncle B.P. was also not error because the Agency "is not required to 'cast about' for information or pursue unproductive investigative leads." (*In re D.S.*, *supra*, 46 Cal.App.5th at p. 1053.) For the same reason, the Agency's failure to attempt to locate and contact maternal uncle D.P. was not error. The Agency, however, did have contact with paternal grandmother and two maternal aunts. Because these individuals each qualify as extended family members under section 224.2, the Agency's failure to ask them about L.T.'s possible Indian heritage was a violation of the Agency's initial inquiry obligation.[5]

---

[5] On November 9, 2022, the Agency filed a second motion to augment. The Agency sought to augment the record on appeal with two additional documents purportedly filed in L.T.'s siblings' case for the purpose of showing the Agency conducted additional ICWA inquiries of certain family members. However, unlike the report attached to the Agency's November 2, 2022 motion to augment, these additional documents are not certified copies. As such, it is not clear these documents were filed or made part of a court record and we decline to consider these documents for that reason. The Agency's November 9, 2022 motion also sought to augment the record with a September 8, 2022 reporter's transcript from L.T.'s siblings' case for the purpose of showing the juvenile court found ICWA did not apply in that proceeding. As with the minute order from that hearing, we decline to consider the reporter's transcript because it matters not whether there was an ICWA finding in L.T.'s sibling's case, but rather whether documents from that case show lack of prejudicial error in L.T.'s case. (*In re Z.N.*, *supra*, 181 Cal.App.4th at p. 300.)

The Courts of Appeal have applied varying analytical frameworks to evaluate whether errors in the ICWA initial inquiry are prejudicial. We need not address these various approaches because this division has adopted the approach articulated in *Benjamin M.* (*In re Y.M.* (2022) 82 Cal.App.5th 901, 916). Under this approach, error is harmless unless "the record indicates that there was readily obtainable information that was likely to bear meaningfully upon whether the child is an Indian child" and that "the probability of obtaining meaningful information is reasonable." (*Benjamin M.*, *supra*, 70 Cal.App.5th at p. 744.)

Here, any information the Agency may have obtained from an inquiry of the two maternal aunts was not likely to bear meaningfully on whether L.T. is an Indian child where both Mother and maternal grandmother identified only possible Navajo heritage and Navajo Nation already denied that the family was enrolled or eligible for enrollment. The failure to conduct an ICWA inquiry of paternal grandmother was also harmless error under the *Benjamin M.* standard. Not only did Father and paternal grandfather both deny possible Indian heritage, but paternal grandmother and paternal grandfather lived together and presumably would have discussed the issue if paternal grandmother had contradictory information. Thus, it is not likely that an inquiry of paternal grandmother would have revealed information likely to bear meaningfully on the issue of L.T.'s Indian status.

In sum, while the Agency's failure to ask the two maternal aunts and paternal grandmother about L.T.'s potential Indian ancestry was a violation of section 224.2, subdivision (b), we conclude such error was harmless.

## III.

## DISPOSITION

The juvenile court's order terminating parental rights is affirmed.  The Agency's November 2, 2022 motion to augment is granted, in part as to the addendum report filed in L.T.'s siblings' case on September 7, 2022, and denied in part as to the September 8, 2022 minute order in L.T.'s siblings' case.  The Agency's November 9, 2022 motion to augment is denied.


McCONNELL, P. J.

WE CONCUR:


HUFFMAN, J.


DATO, J.

15